Good morning, Your Honors. May it please the Court, my name is Stephen Woodrow, and I represent the appellant Thomas Robins. If I could, I would like to reserve two minutes for rebuttal. You may do so. Just watch the clock, because it counts down. Thank you, Judge. Your Honors, in violation of the Fair Credit Reporting Act, appellee Spokeo markets and sells consumer reports without regard for their accuracy. The District Court initially denied Spokeo's motion to dismiss, finding that Robins, a job applicant whose information was inaccurately disclosed by Spokeo, enjoyed standing. Four months later, however, the lower court reversed itself, holding that, quote, mere violation of the FCRA does not confer Article III standing where no injury in fact is properly pled. Otherwise, federal courts will be inundated by WebSurfer's endless complaints. Today, Your Honors, this Court should reverse and remand for two related reasons. First, appellant Robins enjoys standing, as Spokeo willfully failed to adopt reasonable procedures to ensure accuracy with respect to his information in particular and cause harm to his employment prospects. And second... What is the... this was a dismissal of a complaint. Yes, Your Honor. Did you allege willful refusal to adopt reasonable measures? Yes, Your Honor. We expressly alleged at paragraphs 65, 71, and 75 that Spokeo acted willfully in failing to adopt reasonable procedures. Willfulness can also be gleaned from the complaint's allegations, Your Honor. Let me ask you, other than the conclusion that it's pled willfully, what were the facts which you allege which would make it plausible that it was willful within the Iqbal-Etoile case? Yes, Your Honor. The facts that give rise to a showing of willfulness here, the first is Spokeo's disclaimer, where it's disclaimer, Your Honor, wherein Spokeo expressly disclaims that it is a consumer reporting agency under the Act. This signifies that Spokeo understands that its conduct might well fall within the Act, but it is not taking any steps to honor the Act's provisions and protections. By disclaiming that it is acting as a credit reporter, that's evidence that it creates a reckless risk of inaccuracy? Yes, Judge. It evidences that Spokeo knows what it is doing by assembling and evaluating these reports and this information does not comport with the standards of the FCRA. Otherwise, there would be no need for it to disclaim its standing as a consumer reporting agency. But by virtue of the fact that it expressly disclaims these responsibilities, it is in essence acknowledging that it has them. Your Honor, in addition to the paragraphs 65, 71, and 75 that express the State willfulness and the disclaimer, we allege at several points throughout the complaint, such as paragraphs 12 through 13, 17 through 21, and then later on in the 30s, that Spokeo generates original content projecting a consumer's wealth level and credit estimate. So it takes steps beyond merely aggregating data and actually produces its own information. But the district court didn't dismiss on the ground of failure to state a claim. It dismissed only on the ground of standing. So in your view, would we have to or even should reach any other issue other than standing? No, Your Honor. Resolving the standing issue would require So you might have standing but lose the case later. I mean, that's not for us to decide, right? Correct. And while we do not lose the case later, we absolutely have standing, Judge. Your standing argument is based on the inference of a private right of action under 1681N. Do I understand that correctly? Yes, Your Honor. Spokeo willfully violated the Act. It knew that its conduct would fall under the Act's provisions. It expressly disclaimed any responsibility in an attempt to dodge those provisions. Well, there's no express recital of a private right of action in the statute. How do we get to the conclusion that there's a private right of action? What cases are you relying on? Yes, Judge. Both the Seventh Circuit and the Sixth Circuit have recognized that no pleading of actual damages is necessary to bring a claim alleging willfulness under the FCRA. The FCRA states that a consumer reporting agency that, quote, willfully fails to comply with any requirement imposed under the Act with respect to any consumer is liable with respect to that consumer. Applied here, Robbins is a consumer under the Act, and Spokeo willfully failed to adopt reasonable procedures with respect to his information in particular. Thus, he's not some random litigant who Spokeo said nothing inaccurate about, nor is he a generalized citizen with some generalized grievance claiming that Spokeo has harmed other people who experienced some sort of greater injury. Nor would the Act allow for that. To the contrary, as a consumer, he's someone who's been harmed by conduct that the Act expressly prescribes and has been granted a right to judicial relief. As this Court explained in Edwards v. First American Court, once again quoting the Supreme Court's decision in Worth v. Selden, the injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing. Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. Your Honors, as I stated before, applied here as a consumer, Robbins has standing under the Act. But it is important to note that although Congress could have manufactured a new type of injury when passing the FCRA, it really didn't do so here. The FCRA's statement of purpose requires plainly that consumer reporting agencies exercise their, quote, grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. Of course, since the early 1900s, our laws have been Spokio is subject to the statute? Yes. Your Honor, in pleading the cause of action, because aggrieved consumers only have redress under the Act against a consumer reporting agency, it is part of the case that Spokio would need to be found, a consumer reporting agency, to have liability under the Act. But we don't have to reach that at this stage. We're at the standing stage, is your argument? Yes, Judge. Well, that tees it up pretty much. Why don't we hear from Spokio, and then you can reserve all the remainder of your time, unless there's something else you want to be sure and tell us. Your Honor, I'll reserve the remaining time for rebuttal. The only thing I was going to mention, Your Honor, is that our American tradition of jurisprudence has recognized privacy claims, including false light and public disclosure of private facts, for over 120 years. Congress didn't invent a new type of harm. Rather, it took a recognized type of harm, an invasion of privacy, and codified it in a statute, which no one can argue credibly Congress lacks the authority to do. Thank you. Very well. We'll hear from Spokio. Thank you, Your Honor. Donald Falk for Spokio. Robbins' position appears to be that the FCRA has been constructed as a kind of bounty statute, where any of the millions of people that are in some way affected by a credit reporting agency have a damages claim for private enforcement, regardless of any individual harm. Counsel, the complaint in this case alleges that your client generated inaccurate reports about him in violation of the statute, not about somebody else, and gave that to third parties and that it caused him harm. So under sort of ordinary standing principles, that states a personal harm of a pecuniary type. And it seems to me that the bulk of your arguments go to the merits of the case and explain why he should lose. But I have difficulty following why he doesn't have standing when he says, you did something about me. He does say that the procedures were not followed with respect to him. But that is, that does not differentiate him from any of millions of other people and the action, the action, the only way he can get to standing here is through the action that Congress created. He makes an argument at some point that he doesn't even need 1681, but I think it's pretty clear that he does need the action that Congress created. And the action, and I think the only action Congress could create for an individual is one that involves harm and not this kind of attenuated existence of reproduction of inaccurate information. I mean, that is no more, that is no more. But doesn't that go to the merits of the case? I mean, standing is designed, it seems to me, to determine whether the individual plaintiff has a personal stake or is instead just out there as a generic do-gooder. And this person says, you lied about me and you did so because you were willfully lacking in appropriate care with respect to the information that you put out there. And that may be not true, ultimately, but it seems to me that the standing inquiry is a very narrow one. Does he have a personal stake in the way that Congress intended as a consumer? Well, I think the standing inquiry goes beyond just what Congress intended, because Congress cannot manufacture standing as the court held in a direct effort to do that in Rainsview-Byrd. But what happens, what is here is he is as much a bystander, yes, his information is involved, but he is as much a bystander as someone who watches someone cut them off and make an illegal left turn. I mean, yeah, there's witness some harm, but unless something has happened, something tangible, distinct and palpable, you don't have the type of injury in fact that would allow you to bring a lawsuit in federal court. You have the FTC to take care of these broad and differentiated harms. So if your client lied about somebody to a third party, there's no standing on the part of the person who's lied about? I mean, isn't that a traditional defamation-type claim? I mean, it seems very similar to, it's not identical, obviously, but it seems very similar to very traditional torts and torts standing. Well, first I take issue with the characterization of what Spotio did as lying. I don't think there's any. This is a reproduction of information from other sources. I think that was a hypothetical. That was a hypothetical, but it's also, it's about the merits. No, I understand, well, I understand that, Your Honor, but I just wanted to make that point at the outset. But I do not think, in the rare instances when mere statements can support injury, they have to be statements that have some demonstrated significance. Either, you know, something that is, you know, on its face, recognized to create harm, and there's nothing here that even remotely does that. And you think credit reports aren't important? No, I do not think credit reports are not important, Your Honor. I believe that what this person has alleged, and we're talking about this person, not the FTC saying you misused procedures, not someone who says, I'm like this plaintiff, that I actually applied to someone, and, you know, I asked them why they didn't call me back, and they said, you know, there's some stuff in the credit reports. Where in the statute does it require that to bring the claim in, as distinct from getting a certain amount of damages for bringing the claim? Well, the statute only, the statute only creates a cause of action for damages, which can be measured either by actual damages or by a statutory minimum or maximum amount. But this, whether, regardless of what the statute says, the statute makes clear that you're looking at harm and not mere, you know, the mere existence of a violation of necessity with any, either an actual CRA or an accused CRA would involve, in most instances, lots and lots of people with no perceptible harm. That narrows down both the statute and the injury and fact requirement, narrow down the private people that can come in and enforce this technical regulatory statute. This is not something, this is something that, again, this is not a statute, and there are no allegations that are something scandalous has been spread and was not withdrawn upon request. In fact, there's no allegation that he even asked Spokio to take anything down. There's no allegation that he tried to correct any information that was being reproduced by Spokio. So we're in a very different place with information that on this complaint looks at worst neutral and at best perhaps favorable. And to derive injury and fact from the retransmission of inaccuracies of that kind would essentially open up every conceivable CRA to a potential lawsuit to determine the reasonableness of their procedures, which, you know, can be a very fact-intensive inquiry based on no injury at all. That's exactly what Article III is supposed to prevent, and there is no sign. I'm not sure that you actually have to reach out. It sounds like Article III, in your view, is a substitute for the merits. Not at all, Your Honor. Not at all, Your Honor. It is a screen. It is a screen that determines who can enforce, among other things, statutory and regulatory requirements. It is indeed a screen, but it is not a substitute for the merits. Well, then, counsel, I think we need to hear your take on our Edwards case. Absolutely. And the Sixth Circuit's case in Baudry. Why aren't they pretty compelling for the appellant here? Well, I think, with respect, Your Honor, the Edwards case involved there is a quotation in the Edwards case that comes from Supreme Court cases that dealt with very different issues. And it is true that the Supreme Court, in generally talking about the ability of Congress to create standing or to create a cause of action, can say that something that some type of conduct is unlawful and then if you have an injury, you can recover for it. And the court in Lujan, in a passage that we cited, explained you can build upon something that is some sort of palpable injury and say there's something unlawful about it. Edwards, I think, is, by comparison at least, a relatively simple case. Even though, you know, even that setting apparently was enough to briefly, though, not to persistently grab the Supreme Court's attention. That case is very different from this because it begins with a payment of money, which Congress has stepped in and said, you know what, if that's a payment to a captive insurer, you're not getting what you paid for. It's not a pure pecuniary loss, but you didn't get the choice that Congress said you should have. You didn't have the benefit of what we all know is significant or can be significant competition in services. All of us, I think, are old enough to remember airlines competing on services despite the regulated prices. Well, the fact that all the prices of a title insurance company are the same don't at all reflect on what may be significant variations in quality. And the court's holding was that you don't need an overcharge so long as you've been deprived of this opportunity and the information you were supposed to get at a minimum because, as I recall, the complaint was somewhat complex. But in the simplest case, you were deprived. You paid for something you didn't get. And the bodery with respect, I think, just overreaches. And I don't think I can stand here and try to distinguish that case. I think it takes a statement of the court which comes in cases that don't involve the creation and a real attempt to manufacture standing. I mean, two involve entirely different issues, Worthen and the Linda RS case. And then Lujan involves the APA where you have a very kind of straightforward, aggrieved analysis there for the APA. And I think with respect, the bodery ran much farther than this court did in Edwards. And I think we know both from Lujan and from the grant of Sirden-Edwards that Edwards appeared to be pushing the limit. I'm not sure it did in light of the real analysis of the statute there because it begins with a payment. Well, bodery is right on this particular statute, 1681N. So when we see that from another circuit, we pay some attention to it. Why should we ignore it? I would not suggest that the Court should ignore bodery, Your Honor. But with respect, I think it was wrongly decided for the reasons that we've expressed. It takes a statement out of context and makes the fact that Congress can outlaw conduct that makes, you know, what is the simplest ‑‑ I think Edwards is the simplest example, and there are lots of other statutes that do similar things. If there's nothing saying that it's wrong to have a captive insurer, there's nothing facially. There's an injury of a sort. You've paid money. But it's not clear you've been injured in any way. If Congress says X, Y, and Z have to be disclosed, well, then you've got an injury. But you've paid money. You've got ‑‑ you don't always have to pay money, and we're not saying that, and the Court didn't say that in Edwards. But you start with that, and you ‑‑ But at the standing issue stage, we look simply to the allegations and the complaint, don't we? We don't have to get to the merits of whether an injury, in fact, occurred, do we? Well, you have to get to the merits of ‑‑ not the merits, but you have to determine whether the type of injury that is pleaded is sufficient to constitute an injury, in fact, under Article III. You definitely have to do that, and that is what all these ‑‑ you know, that is what standing jurisprudence looks at at various stages of litigation, to be sure. But that is what that analysis looks at. What is the injury here? What are they ultimately saying? Is this too speculative? Is this something ‑‑ is any real palpable distinct harm so far down the chain of speculation that it cannot support an injury, in fact, under Article III? Is it something, you know, as in Clapper, where they're basically saying we're worried about ‑‑ we're speculating that something might happen, and we're worried about it. Can you bootstrap standing that way? That's what ‑‑ and with respect, you can't. But that is what the inquiry is. And yes, they don't have to ‑‑ he would still have to prove whatever he alleges, and we're not looking into whether he can do that. I mean, for all we know, he can't prove anything of what he alleges. But what we're ‑‑ but what this case is about here ‑‑ But what he's alleged is that your client willfully adopted procedures that resulted in the publication of highly inaccurate information about him Now, he may be wrong about ‑‑ he may not be able to prove any of that. But that just seems to me classic description of standing. Someone says you did something to me, and I've suffered economic harm. Now, whether it's true is a whole other question. But, Your Honor, with respect, he did not even plead that he lost any employment. He pled originally that he was concerned that something might happen, and then he unidentified prospects. The operative complaint says employment prospects. Undefined. He says he's been unemployed, and the untrue information has harmed his employment prospects. What does that mean? That means looking forward somewhere down the road, some employer may ‑‑ I don't know that anybody has. I haven't done my investigation apparently to find out whether anybody's done that. I've never looked to see whether anybody, anyone I've ever applied to has ever looked at that information. That's a matter of proof. Well, that's a matter of ‑‑ Excuse me. In terms of just the verbs, you know, defendant has caused plaintiff harm by creating, displaying and marketing inaccurate consumer reporting information about plaintiff. In light of the fact that plaintiff remains unemployed, defendant has caused actual harm to plaintiff's employment prospects. The harm is also imminent and ongoing. So just as a matter of grammar, I read that as describing past, current and future conduct. With respect to your Honor, with grammar that may be so, but if all it takes to get standing is to say I've been harmed, period, then I don't think we have any Article 3 left. And I don't think that that's ‑‑ with respect, I do not think that that gives ‑‑ What would you think would be sufficient? Does he have to plead facts saying I know that I was hurt because I didn't get a job for Lockheed and I applied for a job at Lockheed? Is that the sort of thing you're talking about? It probably does not have to be that particularized, but he has to have some sense that some employer has ‑‑ How particularized does it have to be? I mean, does he have to say I went to ‑‑ does he have to plead evidentiary facts showing that he was refused employment because of the credit history? Is that your point? He at least would have to plead that employers are looking at and have relied or are likely to rely on the type of inaccurate information he's complaining about here. Yes, I don't think that's an undue burden to do. He's basically asking to be allowed to come in and sue so he can find out whether he's been injured or he has any standing at all, and that's not how it's supposed to work, Your Honor. Now, certainly under the allegations he did make that Judge Graber just read to you, he could bring in proof under Conley v. Gibson that this is what happened, that he was denied employment. But he doesn't even allege that he was denied employment, Your Honor. But what you're saying is that ‑‑ He doesn't allege that. He just alleges there's harm to his prospects. He doesn't allege that he was denied employment. If he had alleged he was denied ‑‑ I guess you're not listening to what I said, Mr. Falk. Try to listen. I know that you have this case very much in mind and you have your own points. But what I'm saying is that under the allegations made, Mr. Robbins could bring in evidence that he'd been refused because of the credit reporting history. True? Could he bring in evidence? If the allegations were sufficient to establish standing, of course he could bring in evidence, but he hasn't ‑‑ he hasn't made the ‑‑ he hasn't alleged. Our conversation is not leading anywhere. Thank you very much. Thank you, Your Honor. Thank you, Mr. Falk. Your time has expired. Mr. Woodrow, you have some remaining time. You might want to address the point Mr. Falk makes about the inadequacy of the recitals in paragraphs 34 to 37 in the complaint, in the First Amendment complaint. Yes, Your Honor. With respect to the allegations about the type of harm that my client suffered in particular, Your Honors, he does not know at this point which of the prospective employers that he may have applied to received inaccurate information from Spokio. The important thing, Your Honors, is that the act doesn't require him to. Congress did not create a generalized grievance lawsuit by passing a lawsuit by passing the FCRA. Liability is imposed on a consumer reporting agency where that agency willfully fails to adopt reasonable procedures to ensure maximum possible accuracy with respect to the specific consumer. It does not say, the Fair Credit Reporting Act does not say that a consumer reporting agency is liable to any disconnected consumer whose information was not subjected to any What facts do you allege that makes it plausible that he's been turned down by anyone? Judge, what we allege is that his, again this is paragraphs 33 through 35, is that the inaccurate reporting is particularly harmful to him because he's currently out of work and seeking employment. And that Was he out of work before this information was published? I believe he was, Your Honor, and I believe that he is still looking for work while this inaccurate information is out there. What facts does he allege that makes it plausible that this credit reporting caused his unemployment? Yes, Judge, like I said before, he alleges that it's causing harm to his financial prospects. Conclusions. Give me some facts which are alleged to make it plausible that this happened. Your Honor, he's alleged that he's unemployed, that he's seeking employment. But he was unemployed before the credit reporting took place. You've just admitted that. Certainly, Judge. So that doesn't tell me anything. Certainly, Your Honor, but he still suffers ongoing harm to the extent that Why? Because inaccurate information is out there from a consumer reporting agency. But there were factors that made him unemployed before the information was published, and that could be a separate and independent cause of his being unemployed. It could, but it doesn't make it any easier. What facts does he have does he allege to say, no, it isn't the fact that I was unable to get employment before because of whatever the situation was. Now I'm unable to get employment because of this credit reporting. What facts allow us to infer that plausibly? Yes, Judge, I think we would have to look at the facts as set forth from 33 to 35 of the complaint, where he alleges that he remains unemployed and he can't get work going forward. I think what the court is asking at the pleading stages is for, if that were to be the standard, would be to have my client produce evidence of what information No, not evidence. Make allegations. All right? I have investigated, and I have learned that I was turned down. Correct. Because of it. He doesn't say that. Correct. And the act doesn't require him to, Your Honor. You have to, Mr. Falk certainly has a point that you have to show some causality, some connection between whatever it is Spokio did and the harm to your client. Correct, Judge. And the harm suffered by my client is that it had I'm talking about causality now. Where is the cause? Where is the allegation? I see the sentence in paragraph 35 of the complaint, defendant has caused actual harm to plaintiff's employment prospects. Is that enough? It is, Your Honor, at the pleading stages. And one thing that we need to be careful of is what harm we're talking about. These allegations were added to the First Amendment complaint because the district court was zeroed in on there needing to be some sort of allegations of actual damages. So to the extent that was required I think that's exactly where Mr. Falk is coming from. Correct. The problem with that, Judge, is that the FCRA doesn't require a showing of actual  damages. So Baudry says, that's what the Seventh Circuit recognized in Murray v. GMAC Mortgage Court, this Act does not require a showing of actual damages because the harm that the Act recognizes is the invasion of the consumer's right to privacy. It's stated right in the Act's statement of purpose, Your Honors. The FCRA's statement of purpose requires that consumer reporting agencies exercise their, quote, grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. So it's this public disclosure of private facts. It is putting my client in a false light. That's the harm that is clearly traceable to Spokio's inaccurate reporting and willful failure to adopt reasonable procedures. And you've alleged that harm in, what, 30? Well, somewhere between 30 and 34, I assume. Yes, Judge. That type of harm is alleged at paragraph 40. Specifically, privacy rights are mentioned in footnotes 2 and 3 of the complaint. Your Honor, as the lawyer on appeal, I would love to have gone back and be able to amend the complaint to make it more clear that there's a privacy right. But this is an issue of law. The Congress passed the Fair Credit Reporting Act not manufacturing some new type of injury, but taking an injury that has been recognized for over 120 years in the American tradition of jurisprudence and codifying it with respect to consumer reporting agencies in particular. And this brings me to another point that counsel made that deserves to be addressed. How can there be harm where Spokio may have even overstated my client's financial condition? And that also brings me back to the FCRA's statement of purpose, which emphasizes the central importance of accuracy, expressly saying that inaccurate credit reports directly impair the efficiency of the banking system. So when in passing the FCRA, Congress identified two harms, that inaccurate reports impair the efficiency and accuracy of the banking system and they infringe on consumers' privacy rights. So nothing in the Act suggests that its protections are limited to only those individuals who've had information reported about them that suggests they're worse off financially and for good reason. It's entirely plausible that an employer may pass on a candidate he or she deems overqualified or who would be looking for too generous a compensation package, or a candidate may be offered a job that they're not qualified for. In short, Your Honors, accuracy cuts both ways. And Spokio shouldn't be permitted to avoid liability merely by claiming that in some cases it may have overstated someone's financial condition. Judges, in the final analysis, the district court shouldn't have reconsidered its prior denial of Spokio's motion to dismiss. Robbins, as a consumer, was subjected to Spokio's willful violations of the Act and he enjoys standing to bring this lawsuit. Privacy violations have been recognized as being even more significant on people in terms of harm than physical injuries. Thank you. You ended exactly when the red light came on. I congratulate you, Counsel. I saw the clock, Judge. Thank you very much for your time this morning. Thank you, Counsel, on both sides. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Bea